## Jessup's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.
The facts appear from the adjudication of

HENDERSON, J., Auditing Judge.—Augustus E. Jessup, the decedent, died October 16, 1925.

By indenture of marriage settlement dated June 10, 1890, between Augustus E. Jessup and Hon. Lady Mildred Marion Bowes Lyon, certain property was assigned, transferred and set over to the trustees therein named, in trust to pay over the income therefrom unto the said Augustus E. Jessup for life, and as to one moiety thereof:

"18. . . .

"(d) After the death of the said Augustus Edward Jessup and the death or remarriage of the said Lady Mildred Marion Bowes Lyon, the Settlement Trustees shall subject as aforesaid hold such First Moiety and the then present income thereof In Trust for all or such one or more exclusively of the other or others of the issue of the said intended marriage whether children or remoter issue (but as to remoter issue to be born within the lifetime of the said Augustus Edward Jessup or within Twenty one years after his decease) to vest at such time or times and if more than one in such shares and with such gifts over and generally in such manner for the benefit of such issue or some or one of them as the said Augustus Edward Jessup shall by Deed revocable or irrevocable or by Will or Codicil appoint And in default of and until and subject to any such appointment In Trust for all or any the children or child of the said intended marriage who being sons or a son shall obtain the age of Twenty one years or being daughters or a daughter shall attain that age or marry under that age with the consent of their or her parents or surviving parent or their or her guardian or guardians or surviving guardians or guardian if any and if more than one such child in equal shares.

"19. Provided always that any child who or whose issue takes any part of the Trust Property under any appointment in pursuance of the power lastly hereinbefore contained shall not in the absence of any appointment to the contrary take any share in the unappointed part thereof without bringing the share or shares appointed to him or her or to his or her issue into hotchpot and accounting for the same accordingly."

As to the second moiety, the indenture provides as follows:

"22. After the death of the said Augustus Edward Jessup the Settlement Trustees shall (but subject to the power of appointment hereinafter contained) hold the said other or Second Moiety of the Trust Property and the income

thereof . . . subject to the interest which any wife of the said Augustus Edward Jessup who may survive him may have therein under the laws of Pennsylvania for the distribution of the personal estate of intestates, to pay, assign and transfer the same to the then living child or children of the said Augustus Edward Jessup and the issue of any children deceased, in equal shares per stirpes and not per capita. . . .

"23. Provided, nevertheless, that notwithstanding the lastly hereinbefore contained Trust it shall be lawful for the said Augustus Edward Jessup by any Deed, revocable or irrevocable, or by will or codicil to appoint, that from and after his decease the whole or any parts or part of the said Second Moiety of the Trust Property, or of so much of the said First Moiety as shall then have come or shall thereafter come within the operation of the Trusts of the Second Moiety shall go or devolve to or in favor of all or any or such one or more of the limited class of appointees hereinafter mentioned, to take effect or vest at such time or times and with such gifts over and generally in such manner for the benefit of such appointment as the said Augustus Edward Jessup shall appoint.

"24. The limited class of appointees above mentioned include and consist of the following persons:

"(1.) The said Lady Mildred Marion Bowes Lyon or any future wife of the said Augustus Edward Jessup.

"(2.) Any Child or remoter issue of the said Augustus Edward Jessup by any marriage.

"(3.) The said Clara Jessup Heyland, her present or any future husband any child or remoter issue of said Clara Jessup Heyland.

"(4.) The said Bernard Constable Maxwell.

"(5.) Any person being of kin to the said Augustus Edward Jessup.

"(6.) Any person named or referred to as legatee in the Will of Alfred Du Pont Jessup, or of their respective issue.

"Provided, that every appointee under the foregoing power be born in the lifetime or within twenty-one years after the decease of said Augustus Edward Jessup."

Thereafter the said Augustus Edward Jessup married the said Lady Mildred Marion Bowes Lyon and by her had two children, to wit, Alfred C. Jessup and Alexander M. Jessup.

Lady Mildred Marion Bowes Lyon Jessup died, and Augustus Edward Jessup married one Hyacinth Mary Cavendish Bentinck, and by her had two children, to wit, Mary V. Jessup (now Hood) and Olive C. L. Jessup.

Hyacinth Mary Jessup died, and Augustus Edward Jessup married one Jenny Shaw (now Jenny Nunes de Sa), who survived him.

Augustus Edward Jessup died October 16, 1925, leaving to survive him two children by his first marriage, to wit, Alfred C. Jessup and Alexander M. Jessup, two children by his second marriage, to wit, Mary V. Jessup Hood and Olive C. L. Jessup, and his third wife, now Jenny Nunes de Sa. There were no issue of a deceased child. He had no issue by his third wife.

Augustus Edward Jessup left a will, whereby, inter alia, he provided as follows:

". . . I do hereby exercise the power of appointment vested in me under the terms of the said marriage settlement, and from the corpus of the fund held thereunder at my disposal at the time of my death I give and bequeath as follows:

"I give and bequeath to each of my children, Alfred C. Jessup, Alexander M. Jessup, Mary V. Jessup and Olive C. L. Jessup, the sum of Five thousand Dollars ($5,000), to be paid to each of them as soon as possible after my decease,

free of all succession and inheritance taxes and death duties; I give and bequeath to my wife Jenny J. Shaw the sum of five thousand Dollars ($5,000), to be paid to her as soon as possible after my decease, free of all succession and inheritance taxes and death duties;

"All the rest, residue and remainder of the said fund, I give, devise and bequeath unto my Trustees hereinafter named, to divide the same into thirty equal parts or shares, and to hold the same in Trust, that is to say:

"Ten (10) of such parts or shares for the benefit of my son Alfred C. Jessup; five (5) shares for the benefit of my son Alexander M. Jessup; five (5) shares for the benefit of my daughter Olive C. L. Jessup; five (5) shares for the benefit of my daughter Mary V. Jessup, and five (5) shares for the benefit of my wife Jenny J. Shaw, under separate trusts, to pay over the income therefrom unto my said wife and children by any previous marriage respectively for life. In Trust, upon the death of each child, to assign, transfer, pay over and divide the principal of such share to and among his or her children, or the issue of deceased children, share and share alike, per stirpes, upon the principle of representation In Trust, upon the death of any child without leaving children or issue him or her surviving, to divide the share of the child so dying among the other hereinbefore mentioned beneficiaries under this my Will in the same proportion as each share bears to the whole, less the share of the child so dying, and to hold the same under the same uses, trusts, contingencies and remainders hereinabove set forth;

"And for my wife, in Trust for her life, and likewise for any legitimate issues of my present marriage, who may attain to twenty one years of age and obtain a vested interest, And failing either of these contingencies the said share shall be equally divided between the hereinbefore mentioned and surviving beneficiaries under this my Will."

The marriage settlement trustees filed their account in Court of Common Pleas No. 5, as of June Term, 1922, No. 11415, and by decrees of that court the sums of $5000 appointed by the will of Augustus E. Jessup were awarded to the respective appointees, and the balance to the accountant for the purposes set forth in the will.

Subsequently, the testamentary trustee, this accountant, filed an account in this court to determine the question as to the division of the appointed estate under the terms of the will, and particularly as to whether or not advancements of $50,000 each made by the marriage settlement trustees, under power conferred in said settlement, to Alfred C. Jessup and Alexander M. Jessup, during the lifetime of the decedent, should be deducted from the shares held in trust for said sons.

The auditing judge, Van Dusen, J., in an adjudication filed March 28, 1927, said:

"The language of the decedent in his specific exercise of the power of appointment is clear and explicit. In the ninth paragraph of his will, however, the decedent again refers to the division both of his own estate and that over which he had power of appointment in these words:

" 'Ninth—In dealing with the corpus of my estate, as aforesaid mentioned, in as much as I have executed the powers of advancement of corpus to my sons Alfred and Alexander under the powers vested in me in the settlement of June 10th, 1890, I wish this portion to be excluded from the first moiety of the estate, and the thirty parts in which I have divided my present estate to apply only to such corpus as is held by my Trustees at the time of my death; In as much as the first moiety of my estate, by the settlement of June 10th, 1890, is already settled on my two sons to be given them as I may decide; I have pur-

posely divided my estate into thirty equal parts, whereof my sons receive, as above mentioned, between them fifteen parts, and the other beneficiaries fifteen parts. I mention this so that there may be no misunderstanding in construing my Will.'

"While the exact meaning of this language is perhaps uncertain, there is no indication that the decedent intended to deduct from the shares of either of his sons the advancements made to them by the marriage settlement trustees during his lifetime in accordance with the terms of the deed of marriage settlement. On the contrary, he specifically states in effect that he has divided his estate half for the benefit of his two sons and half for the benefit of his two daughters and wife. All of these appointees are within the terms of his limited power of appointment as to the second moiety under which, in fact, he could have appointed the whole trust estate to any one child.

"Moreover, the two daughters of the decedent who perhaps would be most affected have agreed in writing that the advancements should not be charged against the shares of the two sons."

Judge Van Dusen also said, as to the question of perpetuity:

"As to the parties in interest, the decedent attempted by the trust which he created to postpone the vesting in remainder after the life interests of his wife and children in descendants of his children living at the time of the death of each child, but such an appointment violates the rule against perpetuities: Lawrence's Estate, 136 Pa. 354; and is, therefore, void as to the estates in remainder, but is good as to the life estates of the children and widow, as they take effect immediately upon the testator's death: Whitman's Estate, 248 Pa. 285."

In accordance with Judge Van Dusen's adjudication, the entire fund received from the marriage settlement trustees was awarded to the accountant upon separate trusts for the children and widow of Augustus E. Jessup, as follows: 10/30 in trust for Alfred C. Jessup, and 5/30 each for Alexander M. Jessup, Olive C. L. Jessup, Mary V. Jessup Hood and Jenny J. Shaw Jessup (Jenny Nunes de Sa).

The fund now accounted for is the 5/30 share of Alexander M. Jessup, one of the sons by the first marriage, and the account is filed because of his death on March 3, 1931.

He left to survive him one child, Alexander A. Jessup, his sole issue, who is a minor of whose estate The Pennsylvania Company for Insurances on Lives and Granting Annuities is guardian ad litem.

Alexander M. Jessup left a will, whereof Girard Trust Company is executor and trustee, and whereby he gave the residue of his estate to his trustee in trust to pay the income therefrom to his widow, Carmen Mary Jessup, for life, with remainder to his son, Alexander A. Jessup.

On behalf of Carmen Mary Jessup it is contended that the appointment by Augustus E. Jessup, to take effect after the death of Alexander M. Jessup, to the latter's children or issue, is void on two grounds, namely, that the exercise of the power exceeds the power reserved in the marriage settlement, and the exercise of the power is contrary to the rule against perpetuities, and that the fund should be awarded in default of appointment to Girard Trust Company, executor of the will of Alexander M. Jessup.

The Pennsylvania Company for Insurances on Lives and Granting Annuities, guardian ad litem for Alexander A. Jessup, only child of Alexander M. Jessup, contends for the validity of the appointment, and claims the fund thereunder.

The other parties in interest who may take in default of appointment are the living children of the settlor, to wit, Alfred C. Jessup, Olive C. L. Jessup and

Mary V. Jessup Hood, and his wife, Jenny Nunes de Sa. They, however, disclaim any interest in the fund.

The Real Estate-Land Title and Trust Company is guardian ad litem for John Acland Hood and Elizabeth Anne Acland Hood, children of Mary V. Jessup Hood. They have no interest in the fund before the court, but they have an interest in the separate trust for their mother, which, however, is not before me.

In my opinion, the appointment made by the will of Augustus E. Jessup, after the death of his son Alexander, to Alexander's children or the issue of deceased children, is a void perpetuity.

The rule is to be measured from the date of the deed: Lammot v. Home of the Merciful Saviour, 68 Pa. Superior Ct. 597; Life Insurance Trusts, 45 Harvard L. R. 896.

Alexander was then unborn, and the remainder was to a class the members of which could not be determined until his death.

In Lockhart's Estate, 306 Pa. 394, 401, Mr. Justice Schaffer said:

"Where the gift is to a class, the class must be such that all the members of it must necessarily be ascertained and take absolutely vested interests within the period. If the gift is to a class and it is void as to any one of the class, it is void as to all: 21 R. C. L. 303, 308; Coggins's Appeal, supra [124 Pa. 10]; Wickersham's Estate (No. 1), 261 Pa. 121, 127; Gray, Rule Against Perpetuities (3rd ed.), Secs. 373, et seq.; Foulke, Perpetuities, etc., in Pennsylvania, Sec. 445."

A question of perpetuity cannot await actual results and must be determined by possibilities; though Alexander's son was born in the lifetime of the settlor, there was the possibility of the birth of other children or issue, and neither the class nor the share which the son might take could be determined within the limits of the rule.

The fund must, therefore, be disposed of under the provisions of the marriage settlement, made in default of appointment.

It should be noted that under the marriage settlement, at the death of Augustus E. Jessup, the settlor, there was a division of the fund into equal moieties.

Moiety No. 1 is for the issue of the marriage, as the settlor may appoint.

Moiety No. 2 is for any wife, or the issue of any marriage, subject to the settlor's special power to appoint to them or other designated persons.

Augustus E. Jessup, in exercising the power, appointed the fund as a whole, without making any distinction between the moieties, except in paragraph nine of his will, in which he refers to advancements made to his sons, the children of the first marriage.

Neither Common Pleas No. 5 nor Judge Van Dusen in this court, in making awards under the appointments, directed a segregation of the moieties, so there is nothing on the record to indicate the source of the fund in the account now before me.

The appointments, as above recited, were for the benefit of the two children of the first marriage, and the two children of the second marriage, and the third wife.

As to the children of the first marriage, the appointment could be made from either moiety; as to the other appointees, they are restricted to the second moiety.

In Van Syckel's Estate, 9 Dist. R. 367, the will of the testatrix exercised a special power and also disposed of her own estate. Judge Penrose said:

"What she could not give under the power must be attributed to her unlimited authority as owner; and whatever was required in the proper exercise of her

power of appointment must be regarded as done by virtue of it. The will expressly declares that it is intended to dispose of her own estate and the estate or estates subject to her powers. It is to be construed, therefore, in such manner as to make it efficient for both purposes, rather than that it should be allowed to fail, in whole or in part, as to either: *ut res magis valeat quam pereat.*" See, also, Tower's Estate, 5 D. & C. 369.

The testator has appointed 15/30 to the children of the first marriage; it should, therefore, be considered that this appointment was made from moiety No. 1, and that the appointment of the other 15/30 was made from moiety No. 2, in order not to disappoint the children of the second marriage and the widow.

The appointment to Alexander's child being void, the fund must be returned to its source, which is moiety No. 1, and be disposed of under the provisions found in the marriage settlement with respect to that moiety, which have hereinbefore been quoted in full, and are briefly, that in default of appointment said moiety shall vest in the children of the first marriage. These children were Alfred and Alexander.

There is the further provision in the marriage settlement (paragraph nineteen) that a child taking any part under an appointment shall not take any share in an unappointed part "without bringing the share or shares appointed to him or her or to his or her issue into hotchpot and accounting for the same accordingly."

As hereinbefore recited, the appointment in favor of Alfred was 10/30 of the whole in trust for his life, and that to Alexander but 5/30 of the whole. Furthermore, it is recited in the petition for distribution that there has been advanced to Alfred $77,508.50 of the corpus of his share under the power contained in the will of his father (Item 11, clause 9).

Alexander's share now accounted for is $53,968.42.

Under the direction of the marriage settlement, should Alfred now claim a share, he must bring his $77,508.50 advancement into hotchpot, and probably the balance of his share. The hotchpot would then contain the aggregate of these sums or $131,476.92, one-half of which would be Alfred's share, or $65,738.46. As he has already received more than this amount, he can take no part of Alexander's share and the whole thereof must be awarded to the executors of Alexander's will.

Questions similar to those now raised may arise upon the respective deaths of the other life tenants, and as their trust estates are not before me, this adjudication is without prejudice to the rights of the parties therein.

*Edward W. Madeira,* for exceptant.

*Raymond M. Remick* and *Philip Wallis,* contra.

GEST, J., November 26, 1932.—The power in the deed of marriage settlement was to appoint to a class composed of children or remoter issue (but, as to remoter issue, to be born within the lifetime of Augustus E. Jessup or within twenty-one years after his decease). The will of Augustus E. Jessup, referring to his power of appointment, recites his intention to execute it, but in fact executes it in favor of a class not so restricted, being in favor of children or issue of deceased children generally. It is argued in behalf of the exceptant that the donee of the power intended the remoter issue to be limited as set forth in the marriage settlement. Unfortunately for the exceptant, there is nothing in the will to indicate this or from which it can reasonably be inferred, and we find no decision to support the argument. The appointment, therefore, being in favor of a class, some of whom may be remote, the class cannot be separated, and the entire appointment is bad under the rule against perpetuities. This

must be considered as settled under Lockhart's Estate, 15 D. & C. 594, affirmed in 306 Pa. 394, where numerous cases are cited.

The learned counsel for the exceptant in his elaborate brief cited numerous English authorities, which we have examined and find readily distinguishable from the present case. In all of them it was possible, within the limits of the rule, to separate the valid appointments from those that were remote and, therefore, invalid. Without referring to all of them, we observe that in Sadler v. Pratt, 5 Simons 632, the power was to appoint among the children of the donee's first marriage, and she exercised it by appointing among the children of both her first and her second marriage. Clearly all the children were ascertainable at the donee's death, which was within the period of the rule, so that the separation of the objects was possible. So in Farncombe's Trusts, L. R., 9 Ch. 652, and Re Witty [1913], 2 Ch. 666, the rule had no application. As was said in the latter case, "the whole class can be ascertained within the limits against perpetuities," and "no question of remoteness arises." These cases proceed on the principle that an appointment, generally speaking, is good so far as it gives shares to objects of the power, and only fails so far as it purports to give shares to persons who are not such objects. See Jarman on Wills (7th ed.), 291, 298, 312; Harvey v. Stracey, 1 Drew. 73.

The exceptions are dismissed and the adjudication is confirmed absolutely.