No. 99,953

JUDITH BERRY, *Appellant*, v. NATIONAL MEDICAL SERVICES, INC., d/b/a NMS LABS; and COMPASS VISION, INC., *Appellees*.

(257 P.3d 287)

Opinion filed August 12, 2011.

*Jason M. Hans*, of Rouse Hendricks German May PC, of Kansas City, Missouri, argued the cause and was on the briefs for appellant.

*William M. Modrcin*, of Stinson Morrison Hecker LLP, of Kansas City, Missouri, argued the cause and was on the briefs for appellee Compass Vision, Inc.

*Matthew M. Merrill*, of Brown & Ruprect PC, of Kansas City, Missouri, argued the cause and was on the briefs for appellee National Medical Services, Inc., d/b/a NMS Labs.

The opinion of the court was delivered by

ROSEN, J.: Judith Berry brought negligence and consumer protection claims against National Medical Services, Inc. (NMS) and

Compass Vision, Inc. (Compass) based on urinalysis tests conducted as part of Berry's participation in the Kansas Nurses Assistance Program (KNAP). The district court dismissed Berry's petition with prejudice for failure to state a claim upon which relief may be granted. The majority of the Court of Appeals panel reversed the dismissal of the negligence claim. This court granted NMS's petition for review because the issue presented is one of first impression and likely to recur.

## FACTUAL BACKGROUND

When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, this court must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably drawn from the facts alleged in the petition. Using those facts and inferences, we then decide whether the plaintiff has stated a claim upon which relief can be granted. Because Kansas is a notice-pleading state, the petition is not intended to govern the entire course of the case. *Rector v. Tatham*, 287 Kan. 230, 232, 196 P.3d 364 (2008). Berry asserts the following, which we accept as true for our analysis.

Berry was a registered nurse licensed by the Kansas State Board of Nursing (Board). In August 2003, after admitting to alcohol dependency, Berry agreed to participate in the Board's assistance program, KNAP, which includes submitting to future random testing. Berry claims that during her participation in the program she maintained her recovery and sobriety, did not relapse, and did not intentionally drink any alcoholic beverages.

The Board contracted with Compass to serve as the third-party administrator of KNAP's alcohol testing program. Compass contracted with NMS to provide alcohol testing for nurses in KNAP.

Compass and NMS (collectively Defendants) were leading proponents of ethyl glucuronide (EtG) testing. EtG is a metabolite of alcohol. The presence of EtG in urine reportedly provides proof of prior alcohol consumption, even after the alcohol itself has been eliminated from the body. Defendants established a reporting limit of 250 ng/mL, at or over which EtG test results would be reported as "positive" for drinking alcohol. Defendants claimed that any EtG

test result of 500 ng/mL and above conclusively proved intentional consumption of an alcoholic beverage.

As early as March 2004, published scientific literature suggested that many ordinary products, including Purell sanitizer and other hand sanitizers used in hospitals throughout the country, contained ethanol that would metabolize as EtG, and incidental exposure to these products could show up at levels well above the 250 ng/mL cutoff. In September 2006, the Substance Abuse and Mental Health Services Administration (SAMHSA), a federal agency that is part of the United States Department of Health and Human Resources, issued an advisory stating that EtG testing could be a valuable clinical tool, but it should not be used as the primary or sole evidence that an individual prohibited from drinking, in a criminal justice or a regulatory compliance context, has truly been drinking.

In January 2005, Compass collected from Berry a random observed urine sample and NMS performed an EtG test. Berry received notice of a positive result of 2200 ng/mL on the EtG test, in violation of her KNAP agreement. As a result, Berry was suspended for 2 months.

In June 2005, Berry again submitted a random observed urine sample collected by Compass and tested by NMS. Berry received notice of a positive result of 290 ng/mL on the EtG test, in violation of her KNAP agreement. Unable to work as a nurse and faced with mandatory inpatient treatment and suspension from work based on the June test, Berry refused to continue in KNAP because of the unfairness of the EtG testing. In August 2005, Berry's nursing license was revoked.

On January 16, 2007, Berry filed a petition in district court seeking damages for negligence and violation of consumer protection laws. On August 29, 2007, Berry filed an amended petition which is the basis for this case.

Berry claims Defendants were negligent in a number of respects, including designing, implementing, promoting, and managing their EtG testing protocol. Specifically, Berry alleges the Defendants acted negligently in establishing arbitrary and scientifically unreliable cutoffs over which test results were reported as positive and

in failing to reevaluate cutoff limits to allow for incidental or involuntary exposure or consumption of products containing alcohol. Further, Berry claims Defendants knew that because she was a participant in KNAP, her nursing license would be in jeopardy if she tested positive.

The district court, without analysis or explanation, dismissed Berry's petition with prejudice for failure to state a claim upon which relief may be granted. The Court of Appeals reversed on the negligence claim, finding that Berry was a foreseeable plaintiff, that the probability of harm was foreseeable, and that there was no public policy against imposing a duty on Defendants. *Berry v. National Medical Services, Inc.*, 41 Kan. App. 2d 612, 205 P.3d 745 (2009). The Court of Appeals affirmed dismissal of Berry's consumer protection claim. That issue was not presented for review by this court.

## ANALYSIS

The existence of a legal duty is a question of law over which this court exercises unlimited review. *Glassman v. Costello*, 267 Kan. 509, 521, 986 P.2d 1050 (1999). To find a legal duty to support a negligence claim, (1) the plaintiff must be a foreseeable plaintiff and (2) the probability of harm must be foreseeable. *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 338, 918 P.2d 1274 (1996); *Durflinger v. Artiles*, 234 Kan. 484, 489, 673 P.2d 86 (1983), *disapproved on other grounds Boulanger v. Pol*, 258 Kan. 289, 900 P.2d 823 (1995).

### *Foreseeability*

A foreseeable plaintiff is one that is "within the range of apprehension." *Durflinger*, 234 Kan. at 489. As the court described in *Durflinger*:

"An act is wrongful, or negligent, only if the eye of vigilance, sometimes referred to as the prudent person, perceives the risk of damage. The risk to be perceived defines the duty to be obeyed, and *risk imports relation*; it is risk to another or to others within the range of apprehension. *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), 59 A.L.R. 1253. The existence of negligence in each case must depend upon the particular circumstances which surrounded the parties at the time and place of the occurrence on which the controversy is based."

*Durflinger*, 234 Kan. at 489 (citing *Blackmore v. Auer*, 187 Kan. 434, 441, 357 P.2d 765 [1960]).

Berry easily satisfies the test for a foreseeable plaintiff. Berry submitted to random urinalyses collected by Compass and tested by NMS. Berry was not a bystander, but the direct and immediate object of the Defendants' testing services. The great majority of other states addressing this issue have found that a test subject is a foreseeable plaintiff in an action in negligence against a laboratory under such circumstances. See, *e.g.*, *Quisenberry v. Compass Vision, Inc.*, 618 F. Supp. 2d 1223, 1228 (S.D. Cal. 2007) (noting that Iowa, Illinois, Louisiana, Connecticut, New York, and Wyoming have found that a laboratory owes a duty to the test subject, while only Pennsylvania has consistently held to the contrary).

Considering the foreseeability of harm, the court in *Quisenberry* stated:

"We cannot imagine a more foreseeable harm than the harm that may result from inaccurate laboratory testing of individuals. Laboratory testing is a fact of life in today's labor market, and it is often a pre-requisite to being hired, promoted, or even continuously employed. As some cases in other jurisdictions demonstrate, inaccurately reported test results can have dire consequences on the livelihood of individuals. Employees can lose their jobs, and job applicants can miss out on an opportunity to be considered for a new position or a well-deserved promotion. It is, therefore, fully foreseeable that a mishandling or inaccurate reporting of laboratory test results can harm the individual whose specimens the laboratory is testing." *Quisenberry*, 618 F. Supp. 2d at 1230.

As the Court of Appeals said:

"The harm Berry alleges was equally foreseeable by the defendants. The testing services promoted and provided by these defendants could be used by private employers evaluating prospective employees, by licensing agencies such as the Board here, or by courts when dealing with criminal defendants. Errors in administering alcohol testing programs or reporting their findings could lead to a prospective employee being rejected by a private employer or, in circumstances such as those present here, a licensed professional being denied the opportunity to continue in his or her profession. In the case of the courts, these errors could lead to the loss of personal freedom.

"Here, the defendants solicited business from the Board to test nurses whose licenses were at risk because of claims of alcohol abuse. The defendants could clearly foresee that a positive test result could result in the loss of the test subject's license. The exact harm Berry claims to have experienced here was a foreseeable

consequence of negligence in the testing and reporting of the test results to the Board." *Berry*, 41 Kan. App. 2d at 618.

We agree. Berry was a foreseeable plaintiff and the probability of harm was foreseeable. There is a duty to report test results that are qualitatively and quantitatively accurate. A laboratory testing facility owes a duty to those whose specimens it tests to accurately report results and not to mischaracterize or misinterpret those results.

*Public Policy*

This court may choose not to recognize a duty if the duty is contrary to public policy. *OMI Holdings, Inc.*, 260 Kan. at 338. The majority of the Court of Appeals found that no public policy prevented the court from recognizing this type of duty. Judge Buser disagreed. Under his analysis, the public policy is provided by legislation authorizing the Board to regulate the competency of nurses. This legislation provides Berry with important due process rights in regards to her nursing license. Berry had the opportunity to raise these complaints about Defendants and EtG testing before the Board, but instead Berry chose to withdraw from KNAP. *Berry*, 41 Kan. App. 2d at 623-28 (Buser, J., dissenting).

While there may be an enticing argument that it would have been more prudent for the Board to have considered Berry's complaint about EtG testing, the simple fact that the legislature has set up an administrative scheme to regulate professional competency does not stretch to a statement of public policy that a company performing substance abuse testing under contract with that administrative agency has no duty to the individuals whose samples it tests. In the context of finding duty in a negligence action, this court has found a contrary public policy in only limited situations. In *Ling v. Jan's Liquors*, 237 Kan. 629, 641, 703 P.2d 731 (1985), we refused to impose civil liability on vendors of alcoholic beverages for the torts of their inebriated patrons because an expression of public policy should come from the legislature in the form of a "dram shop law" if that is, indeed, the public policy of this state. In another case, we found that an attorney cannot be liable to a third party for professional negligence because of public policy

considerations. *Nelson v. Miller*, 227 Kan. 271, 607 P.2d 438 (1980) (holding that the public policy favoring free access to the courts allows third parties to make claims of malicious prosecution against an adversary's attorney but rejects professional negligence claims against an adversary's attorney).

The public policy of legislation authorizing the Board to regulate the competency of nurses is intended to protect medical consumers. That worthy goal is not hindered by allowing a nurse to file a claim against a substance abuse testing company for negligent testing. Berry will not get her nursing license reinstated as a result of this negligence claim. There is no public policy to extend protection to a tortfeasor simply because the tortfeasor contracts with a government agency.

We affirm the Court of Appeals and reverse the district court on the negligence claim. This case is remanded to the district court for further proceedings.

MORITZ, J., not participating.

KIM W. CUDNEY, District Judge, assigned.

\* \* \*

BILES, J., dissenting: In my view, reinstating Berry's negligence action is an injustice to these defendants and the voluntary rehabilitation programs with which they contract. If plaintiff truly felt aggrieved by the rehabilitation program procedures offered by the Kansas State Board of Nursing, she had significant due process rights available administratively to protect her nursing license from erroneous testing results. Her decisions to abandon those due process rights and quit the Board's rehabilitation program are what resulted in the loss of her nursing license. This underscores that her claimed injuries are entirely self-inflicted and not the result of any flaws in the Board's testing practices. If such flaws existed, there already were procedures in place to remedy them.

I agree with Judge Buser's dissent in *Berry v. Nat'l Medical Services, Inc.*, 41 Kan. App. 2d 612, 623-27, 205 P.3d 945 (2009). The majority's decision opens a door for administrative licensees to select tort actions against third-party contractors instead of pursuing their due process rights through established licensing procedures. In the end, the result may make it more difficult for licensing agencies to offer rehabilitation alternatives for impairments such as substance abuse.