NOT DESIGNATED FOR PUBLICATION

No. 113,559

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KENYON L. ERICKSON,
*Appellant*,

v.

HAROLD C. O'MALLEY,
*Appellant*,

NATALIE N. MARQUEZ,
*Appellee*.

MEMORANDUM OPINION

Appeal from Riley District Court; DAVID L. STUTZMAN judge. Opinion filed May 13, 2016. Affirmed.

*Judy A. Pope*, of Dickson and Pope, P.A., of Leawood, for appellant Kenyon L. Erickson.

*Debra Egli James*, of Hampton & Royce, L.C., of Salina, for appellant Harold C. O'Malley.

No appearance by appellee.

Before SCHROEDER, P.J., HILL and GARDNER, JJ.

*Per Curiam*: This case illustrates the idiom that no good deed goes unpunished. When Natalie Marquez' car ran out of gas, Kenyon Erickson stopped to offer help and was allegedly injured when Harold O'Malley's car rear-ended Marquez' car. Erickson sued Marquez and O'Malley for negligence. The district court granted Marquez summary

judgment, finding she had no legal duty to Erickson. Erickson and O'Malley appeal, but considering the matter anew we reach the same conclusion. We affirm.

*Procedural background*

On December 13, 2011, Marquez was driving east on Kimball Avenue in Manhattan, Kansas. When she stopped for a red light at the curbed intersection of Kimball and Browning Avenue, her car ran out of gas. Erickson was also driving east on Kimball and saw Marquez' car stopped at a green light in the lane of travel, with other cars maneuvering around her. He saw her cars' hazard lights flashing, pulled around her car, and noticed a driver and a car seat so he decided to see if she needed help. He turned south onto Browning, pulled over, and exited his car. He walked up to Marquez' passenger side window, which she rolled down, either because Erickson knocked on it or because she saw him approach. Erickson asked Marquez if she needed help, but she replied that she did not and had already called someone. While Erickson's head was still in the passenger side window of Marquez' car, O'Malley's car rear-ended Marquez' car, causing its center roof support to hit Erickson.

Erickson sued both Marquez and O'Malley. He alleged that O'Malley negligently ran into Marquez' car, injuring him. Erickson also alleged that Marquez was negligent in "failing to take reasonable care in the maintenance of her vehicle and in not removing her car from the open lane of traffic." Marquez moved for summary judgment arguing that she had no duty to protect Erickson from O'Malley's negligence, and that if she breached any duty, that breach was not the proximate cause of Erickson's injuries. The district court found that Marquez did not owe a duty to Erickson and granted her summary judgment. Both Erickson and O'Malley appeal.

I.    *Do we have jurisdiction to hear this appeal?*

Although the issue of jurisdiction has not been raised by Erickson or O'Malley, appellate courts have a duty to consider jurisdiction on their own initiative. *Smith v. Russell*, 274 Kan. 1076, 1080, 58 P.3d 698 (2002). If the record indicates a lack of jurisdiction, appellate courts must dismiss the appeal. *Kaelter v. Sokol*, 301 Kan. 247, 247, 340 P.3d 1210 (2015). Whether jurisdiction exists is a question of law over which appellate courts exercise unlimited review. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013).

An appeal may be taken to the Court of Appeals, as a matter of right, from any final decision. K.S.A. 2015 Supp. 60-2102(a)(4). Under Kansas law, a judgment is final and appealable only if it finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for future or further action by the court. *Flores Rentals v. Flores*, 283 Kan. 476, 481-82, 153 P.3d 523 (2007). The decision from which Erickson and O'Malley appeal did not resolve Erickson's claims against O'Malley, so it was not a final judgment.

Three days after the district court issued its order granting Marquez summary judgment, however, O'Malley moved to amend that order nunc pro tunc to include the findings required by K.S.A. 2015 Supp. 60-254(b). That same day the district court issued a nunc pro tunc order stating that its previous summary judgment order had omitted certain findings including that there was "no just reason for delay in the entry of final judgment of Defendant Marquez on Plaintiff's claims against her." Although the district court did not mention the statute, K.S.A. 2015 Supp. 60-254(b) states that when an action involves multiple parties or multiple claims, a district court may make a judgment final as to some but fewer than all parties or claims if it "expressly determines that there is no just reason for delay." So the district court amended its order, certifying it as a final judgment under K.SA. 2015 Supp. 60-254(b).

3

But can a district court effectively make a 254(b) certification after the fact? In a published opinion, we have held that a judgment cannot be amended to add the findings required by K.S.A. 2015 Supp. 60-254(b). *Prime Lending II v. Trolley's Real Estate Holdings*, 48 Kan. App. 2d 847, 854-55, 304 P.3d 683 (2013). There, we determined that the reason for the express determination rule is to prevent litigants from having to guess whether an order would be held "final" by an appellate court. See *Dickinson v. Petroleum Corp.*, 338 U.S. 507, 517, 70 S. Ct. 322, 94 L. Ed. 299 (1950) (Black, J., dissenting). We held the district court lacked discretion to make the 60-254(b) certification 10 months after the fact, noting the quandary retroactivity would cause in counting the 30 days in which to appeal. 48 Kan. App. 2d at 855. Having no jurisdiction to hear the appeal, we dismissed the case.

In making its decision, the panel in *Prime Lending* relied on possible dicta from a Kansas Supreme Court case. 48 Kan. App. 2d at 855-56. In *State ex rel. Bd. of Healing Arts v. Beyrle*, 262 Kan. 507, 510, 941 P.2d 371 (1997), the court found that a judgment lacked the proper K.S.A. 60-254(b) language and that it was not possible on appeal to amend the order so as to include required findings within the order. 262 Kan. at 510. To support its rationale, the court cited *Razook v. Kemp*, 236 Kan. 156, 158-59, 690 P.2d 376 (1984). 262 Kan. at 510. But *Razook* does not specifically mention K.S.A. 60-254(b). Instead, it discusses interlocutory appeals under K.S.A. 60-2102(b), noting in order for an interlocutory appeal to be brought from an order, the district court must make the statutorily required findings in that order, and that the time for seeking an interlocutory appeal cannot be extended "by subsequently requesting the court to make the statutory findings requisite to an interlocutory appeal." 236 Kan. at 158-59.

Our cases citing *Prime Lending* have addressed dissimilar facts. In *Goldman v. University of Kansas*, 52 Kan. App. 2d __ , 365 P.3d 435, 440 (2015), no 60-254(b) certification was ever made. The panel noted it was too late to make the necessary certification on appeal, and stated in dicta that "the essential language must be included in

4

the original journal entry." 365 P.3d at 440. In *Deaver v. Bd. of Cnty. Comm'rs of Lyon Cnty.*, No. 110,547, 2015 WL 715909, at *4-6 (Kan. App. 2015) (unpublished opinion), *rev. denied* 302 Kan. ___ (September 14, 2015), the district court did not retroactively amend the judgment but declared the summary judgment order final as of the day it ruled on the motion to amend, noting that the panel in *Prime Lending* had "expressed no determination of whether the district court could have declared the prior order as final as of the date of the current proceeding." 2015 WL 715909, at *5 (citing *Prime Lending*, 48 Kan. App. 3d at 855-56).

We find this case to be distinguishable from *Prime Lending*, *Beyrle*, and other cases cited above because of the peculiar nature of a nunc pro tunc order, as used here. Unlike the after-the-fact amendments of judgment condemned in those cases, a nunc pro tunc order has the legal effect of substituting the later-added judgment for the omission in the original order.

> "The order *nunc pro tunc*, entered by the same trial judge in the district court . . . who tried the case . . . recited that it was through an oversight the finding in question was omitted from the journal entry filed. A fair interpretation of the recitals in the *nunc pro tunc* order is that the trial court actually made the required finding at the time of trial, but through inadvertence such finding was omitted from the journal entry. It must be assumed that the trial judge acted in good faith in correcting the journal entry by order *nunc pro tunc* in order that it might accurately reflect what transpired in the . . . proceedings. Such diligence and good faith on the part of the district courts must necessarily be assumed in all cases.

> "It has been consistently held that the power to enter judgments, decrees and orders *nunc pro tunc* is inherent in courts, and if the journal entry fails to accurately reflect the judgment actually rendered, it is the duty of the court to make it speak the truth. *Cazzell v. Cazzell*, 133 Kan. 766, 3 P.2d 479; *Bush v. Bush*, 158 Kan. 760, 150 P.2d 168; and *Tincknell v. Tincknell*, 141 Kan. 873, 44 P.2d 212. While the foregoing cases are

all civil, no reason is apparent why the same reasoning should not apply to a criminal case. . . .

"When a motion for an order *nunc pro tunc* is pending, the trial judge's personal recollection of the facts and circumstances under which the judgment was rendered and of the court's purpose and intention in rendering it has the probative force of evidence bearing on the propriety of granting or denying the motion presented for determination. [Citation omitted.] . . .

. . . .

"It is clear that the filing of a journal entry *nunc pro tunc* has the same effect as if filed in the first instance. The function of a *nunc pro tunc* order is not to make an order now for then, but to enter now for then an order previously made. *Bush v. Bush*, supra." *Ramsey v. Hand*, 185 Kan. 350, 361, 343 P.2d 225 (1959).

When O'Malley initially received the district court's ruling on the summary judgment motion 3 days after its issuance, he immediately moved to amend that order nunc pro tunc. Upon receiving that motion, the district court immediately amended its order nunc pro tunc to include the omitted K.S.A. 60-254(b) certification. Here, as in all cases, we assume that the trial judge acted in good faith in correcting the journal entry by order nunc pro tunc in order that it might accurately reflect what truly transpired in the proceedings. The effect of that order was to enter 3 days later the order that had actually been made 3 days earlier. Under these facts, we find the K.S.A. 60-254(b) certification was timely made, vesting us with jurisdiction under that statute.

II. *Did the district court err by granting Marquez' motion for summary judgment?*

Erickson and O'Malley claim that the district court should have denied Marquez' motion for summary judgment because genuine issues of material fact remain. We focus on Erickson's arguments because the order appealed from grants Marquez summary judgment against Erickson but leaves Erickson's claims against O'Malley for trial.

6

Erickson contends that Marquez had a duty of care to him and that she was the proximate cause of his injuries.

A. *Standard of Review*

A motion for summary judgment should be granted when the pleadings and evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." K.S.A. 2015 Supp. 60-256(c)(2). All facts and inferences reasonably drawn from the evidence must be resolved in favor of the party against whom summary judgment is sought. *Bergstrom v. Noah*, 266 Kan. 847, 871, 974 P.2d 531 (1999). A party opposing a motion for summary judgment must present evidence showing that a material fact is disputed. 266 Kan. at 871. Disputed facts must be "material to the conclusive issues in the case." 266 Kan. at 871. If reasonable minds could come to different conclusions based on the evidence, summary judgment must be denied. 266 Kan. at 871-72. Appellate courts apply the same rules. 266 Kan. at 871.

Generally, in a negligence action, summary judgment is proper only if the questions presented are questions of law. *Martin v. Naik*, 297 Kan. 241, 245, 300 P.3d 625 (2013). If the district court determines that the defendant in a negligence action did not have a duty of care, it may grant summary judgment because the existence of a duty is a question of law. *Elstun v. Spangles, Inc.*, 289 Kan. 754, 757, 217 P.3d 450 (2009). This court reviews questions of law de novo. *Nero v. Kansas State University*, 253 Kan. 567, 571, 861 P.2d 768 (1993).

B. *Duty, generally*

In a negligence action, the plaintiff carries the burden of proving the following four elements:  (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty, (3) causation between the breach of the duty and injury to the plaintiff, and (4) damages

7

suffered by the plaintiff. *Shirley v. Glass*, 297 Kan. 888, Syl. ¶ 4, 308 P.3d 1 (2013). "Thus, with no breach of duty, there is no fault or negligence issue for the district court to reach." *Kemp v. Hudgins*, No. 108,715, 2013 WL 6331604, at *9 (Kan. App. 2013) (unpublished opinion), *rev. denied* 300 Kan. 1103 (2014).

Black's Law Dictionary defines "negligence" as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm. . . . The term denotes culpable carelessness." Black's Law Dictionary 1133 (9th ed. 2009). Our Supreme Court has acknowledged that the word "negligence," standing alone refers to the "duty" and "breach" elements of a negligence claim. *Fieser v. Kansas Bd. of Healing Arts*, 281 Kan. 268, 272, 130 P.3d 555 (2006).

C. *Breach of duty to Erickson*

Erickson's petition alleged that Marquez was negligent only in the following duties: failing to take reasonable care in the maintenance of her vehicle and in not removing her car from the open lane of traffic. Marquez' summary judgment motion does not specifically address any duty, but generally argues that she owed no duty to Erickson to protect him from O'Malley's negligent driving. The district court agreed, finding that Marquez owed Erickson, a volunteer, no duty whatsoever, and granted her summary judgment on that basis.

1. *Leaving her car on the road*

Erickson argues that K.S.A. 8-1571 and K.S.A. 8-1569, which deal with stopping, standing, or parking in specific areas, impose a duty on Marquez. The latter statute states that "[o]utside a business or residence district no person shall stop, park or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to

8

stop, park or so leave such vehicle off the roadway . . . ." Similarly, K.S.A. 8-1571 states: "(a) Except when necessary to avoid conflict with other traffic . . . , no person shall: (1) Stop, stand or park a vehicle [on certain prohibited places] . . . ." The parties do not allege that Marquez' vehicle was in a prohibited place listed in the statute.

These statutes expressly do not apply to the driver of a disabled vehicle who cannot avoid stopping and temporarily leaves the vehicle on the roadway:

> "(b) This section [8-1569], K.S.A. 8-1571 and K.S.A. 8-1572 shall not apply to the driver of any vehicle which is disabled in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the vehicle in such position."
> K.S.A. 8-1569.

It is uncontested that Marquez' vehicle was out of gas, thus we find it was disabled to the extent that it was impossible for her to avoid stopping. Marquez' testimony that there was a curb at the place where she ran out of gas is also uncontested, thus she could not have rolled the disabled vehicle off the road and had to temporarily leave the vehicle where it was. Accordingly, this situation fits squarely into the exception stated in K.S.A. 8-1569(b).

But even if the exception is inapplicable, these statutes, at most, show duties owed by a motorist to others on the roadway, not the duties of a motorist to one who leaves his car, walks over to a nonmoving vehicle, asks whether assistance is needed, and receives a negative response. To read these statutes to create a duty to one in Erickson's shoes at the time he was allegedly injured would be taking creative license. *Cf. Portenier v. United States*, 520 F. Appx. 707, 717 (10th Cir. 2013) (finding no common-law duty under Kansas law for healthcare professionals to report child abuse, despite their statutory duty to do so, see K.S.A. 38-2223, because that statute does not create individual liability for noncompliance).

9

### 2. *Not getting gas sooner*

Erickson and O'Malley also argue that Marquez, as a prudent driver, should have gotten gas sooner. But Kansas cases have not imposed upon a driver a duty to properly maintain and equip a vehicle in that manner. Nor do our statutes do so. Although our statutes require windshield wipers upon motor vehicles to be maintained in good working order, K.S.A. 8-1741, and require public motor carriers to be maintained in a safe and sanitary condition at all times, K.S.A. 66-1,129(a)(1), these statutes are not at issue here, as no one alleges fault regarding Marquez' windshield wipers, nor does anyone allege her car was a public motor carrier. We find no broader duties arising from our motor vehicle laws. The parties thus point to no legal authority that establishes a duty to properly maintain a vehicle or to put gas in it that Marquez may have breached in this case.

But even assuming such a duty, that duty would not extend to a person such as Erickson, who saw her car, drove around it without incident, then parked his car and exited it safely before reapproaching the disabled vehicle on foot to offer assistance.

### 3. *Not activating hazard lights*

Erickson's response seeks to tacitly broaden the duties beyond those included in his petition by alleging that genuine issues of material fact remain regarding multiple duties, including Marquez' "failing to put on her emergency flashing lights." Of these additional duties, the only one briefed is whether Marquez timely activated her flashing lights. Those not briefed are abandoned. See *State v. Boleyn*, 297 Kan. 610, Syl. ¶ 10, 303 P.3d 680 (2013) (issue not briefed on appeal is deemed waived and abandoned). We assume, without deciding, that this issue is properly before us.

In her deposition, Marquez was asked if she had her lights on and whether she had her emergency flashers on, and she answered yes to both questions. Later in the same

10

deposition, she confirmed that she had activated her flashers before Erickson stopped to offer his assistance:

> "Q. When [Dr. Erickson] came up were your hazards on yet at that time?
> "A. Yes, I believe so.
> "Q. Okay. Do you specifically recall that they were already on when he came up or did he tell you to put them on?
> "A. He did not tell me to put them on. I had already put them on—
> "Q. Okay.
> "A. —which is why he stopped, he saw my hazards."

In his response to Marquez' motion for summary judgment, O'Malley testified that he couldn't say whether Marquez' flashing lights were on, but that he didn't see them. O'Malley testified that Marquez' regular lights were on. When asked if Marquez' emergency flasher lights were on, O'Malley said:  "I didn't notice any or else I would have probably stopped." And O'Malley stated, when again asked if the lights were on:  "I was told by the policeman her emergency lights were on. Now, whether they were or not, I can't say. To me they weren't on or we would have a flashing white and red light, but I didn't see any."

O'Malley did not state unequivocally that Marquez' flashing lights were not on. For purposes of this motion, we do not view O'Malley's testimony as controverting the evidence from Marquez and Erickson that Marquez' flashing lights were on before O'Malley rear-ended her car. O'Malley seems to reason that since he rear-ended Marquez' car, he hadn't seen the hazard lights, so "to him" they must not have been on. But he admitted he really couldn't say whether they were or were not on, and no evidence showed that they would have flashed white and red if they were on. Additionally, testimony that a person did not see another's flashing lights does not necessarily controvert affirmative testimony that the flashing lights were on at the time. See, *e.g*, *Workman v. Wynne*, 142 W. Va. 135, 148, 94 S.E.2d 665 (1956) (finding the statement of

11

a driver that he did not see the car's blinker on, being negative in character, did not controvert affirmative evidence that the signal was on). O'Malley's testimony is not necessarily in conflict with the evidence of other witnesses who saw the flashers; for the observation of the fact by those who saw is consistent with O'Malley's failure to see them.

But even assuming, for purposes of this motion, that O'Malley's testimony is sufficient to controvert whether Marquez had her flashers on, that fact is not disputed by Erickson. Marquez and Erickson agree that Marquez had her flashers on. Erickson admitted that Marquez had her flashing lights on when he passed her, that he saw those lights, and that he safely passed her vehicle without incident, stating:

> "The first time I ever spoke, I noticed that she had been sitting there, and traffic was going around her. And I was going around and I noticed the vehicle had flashers on, obviously a woman in there, and I saw a car seat in the back. And so just driving off, I thought, well I better see if there's anything I can do."

And later in his deposition, Erickson stated:

> "I believe there were vehicles in front of me. The light was green and I noticed everybody was going around it, around her vehicle. And as soon as I saw the hazard lights, I knew that something wasn't right. So I started to go around her vehicle as well. So I got into the passing lane. And that's when I noticed she was sitting there and had a car seat and thought I'd better check."

Although O'Malley may dispute whether Marquez failed to put on her emergency flashing lights, Erickson has conceded this fact; thus no genuine issue of material fact precludes summary judgment between Marquez and Erickson.

## 4. *Duty to third parties, generally*

Erickson does not appear to contend that Marquez is vicariously liable for O'Malley's negligence, but rather that Marquez is directly liable to him for her own negligence. Nonetheless, to the extent that Erickson's case against Marquez may rely on O'Malley's acts, the outcome is no different. Kansas common-law does not impose a duty to prevent a third party from injuring another unless there exists a special relationship between the actor and the third party or injured person.

Under Kansas law, a person has no duty to control a third person to prevent harm to others. Historically, there is no general duty to act for the protection of others.

> "'As a general rule, in the absence of a "special relationship" there is no duty on a person to control the conduct of a third person to prevent harm to others. A special relationship may exist between parent and child, master and servant, the possessor of land and licensees, persons in charge of one with dangerous propensities, and persons with custody of another.'" *Calwell v. Hassan*, 260 Kan. 769, 778, 925 P.2d 422 (1996) (quoting *C.J.W. v. State*, 253 Kan. 1, Syl. ¶ 2, 853 P.2d 4 [1993]).

See *D.W. v. Bliss*, 279 Kan. 726, 735, 112 P.3d 232 (2005) (listing the same types of special relationships). None of those relationships is alleged to exist here.

Our cases have relied on The Restatement (Second) of Torts § 315 (1964), which provides:

> "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> "(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> "(b) a special relation exists between the actor and the other which gives to the other a right to protection."

See, *e.g.*, *Calwell*, 260 Kan. at 778; *Akins v. Hamblin*, 237 Kan. 742, 746, 703 P.2d 771 (1985).

The parties cite no law or facts that raise a genuine issue of material fact that Marquez may have had a "special relationship" with Erickson, such as to give rise to a duty for Marquez to control O'Malley's acts. Nor do the parties show that Marquez may have had a special relationship with O'Malley which could give Erickson a right to protection. Instead, the facts show that before the accident occurred, the parties had no relationship with each other.

Although Kansas law recognizes the rescuer doctrine, that doctrine relates to the negligence of the rescuer, a claim not alleged here. See generally *Bridges v. Bentley*, 244 Kan. 434, 796 P.2d 635 (1989).

### 5. *Existence of a duty is a question for the court*

Whether a legal duty exists is a question of law for the court rather than a fact issue for the jury. *Berry v. National Medical Services, Inc.*, 292 Kan. 917, 920, 257 P.3d 287 (2011). It is a fundamental tort concept that a defendant should not be liable in a negligence action when a plaintiff's injury results from a sequence of events in which that harm is so attenuated or removed from a defendant's conduct as to be unpredictable or unforeseeable. Prosser and Keeton, Law of Torts § 43, p. 280 (5th ed. 1984) (Negligence "necessarily involves a foreseeable risk," so if the defendant's "conduct was reasonable in light of what one could anticipate, there would be no negligence, and no liability."). Since the advent of comparative fault under K.S.A. 60-258a, the Kansas Supreme Court has applied the concept of foreseeability both in examining legal duty and in examining causation. It has explained that a legal duty supporting a negligence claim requires that "the probability of harm [be] foreseeable," *Berry*, 292 Kan. at 920, and that "[the] duty of

14

care is intertwined with the foreseeability of harm." *Shirley v. Glass*, 297 Kan. 888, 900, 308 P.3d 1 (2013).

When we consider the facts of this case in the context of legal duty, we conclude that a reasonable person in the same circumstances as Marquez could not have anticipated the injury to Erickson. Accordingly, the probability of harm was not foreseeable, and Marquez had no legal duty to Erickson to do something different than with her vehicle than what she did at the time of the accident. This lack of duty compels summary judgment in favor of Marquez.

D. *Causation*

Additionally, as mentioned above, the Kansas Supreme Court has also examined the concept of foreseeability in the context of causation. *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 623, 345 P.3d 281 (2015) ("To prove legal causation, the plaintiff must show it was foreseeable that the defendant's conduct might create a risk of harm to the victim and that the result of that conduct and contributing causes was foreseeable."). We do the same, briefly.

Proximate cause is defined as

> "the cause that in a natural and continuous sequence, unbroken by any superseding cause, both produced the injury and was necessary for the injury. The injury must be the natural and probable consequences of the wrongful act. [Citation omitted.] Individuals are not responsible for all *possible* consequences of their negligence, but only those consequences that are *probable* according to ordinary and usual experience. [Citation omitted.]" *Hale v. Brown*, 287 Kan. 320, 322, 197 P.3d 438 (2008).

Proximate cause typically presents a question of fact for the jury. *Hale*, 287 Kan. at 324; *Zimmerman v. Brown*, 49 Kan. App. 2d 143, 157-58, 306 P.3d 306 (2013). But a district

court may decide causation against a plaintiff as a matter of law if the evidence permits no reasonable inference that could support proximate cause. See *Siruta v. Siruta*, 301 Kan. 757, 767, 348 P.3d 549 (2015); *Hale*, 287 Kan. at 324. Such is the case here.

Erickson's injury seems to have been an improbable consequence. Even if we assume negligence (duty and breach of duty) on Marquez' part in what she did or did not do with her vehicle, no facts suggest that Marquez' actions or failures to act posed a danger to a volunteer who would stick his head in her passenger window the very minute that Marquez' car would be struck from behind by another driver. The sequence of events amounted to an unforeseeable scenario that a reasonable person could not be expected to anticipate.

Certainly, had Marquez not run out of gas, Erickson would not have stopped to offer assistance, O'Malley would not have rear-ended her vehicle, and Erickson would not have been injured. The placement of Marquez' out-of gas vehicle was thus a link in the chain leading to Erickson's injury. But links are insufficient because negligence law rejects "but for" causation as a sufficient condition for imposing liability. *Drouhard-Nordhus*, 301 Kan. at 625. Because the evidence permits no reasonable inference that could support proximate cause, summary judgment was warranted on this basis as well.

Affirmed.